AFCODIAN (INTERNATIONAL) LIMITED, Plaintiff, Appellant,

v.

BROMPTON AIR SERVICES DIVISION OF AFRICAN–AMERICAN TRADE CORPORATION, et al., Defendants, Appellees.

No. 84–1519.

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1984.

Decided Jan. 25, 1985.

Joel Z. Robinson, New York City, with whom Thomas G. Gentithes and Randy J. Reisch, New York City, were on brief for plaintiff, appellant.

Carolyn M. Conway, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass.,

was on brief for defendant, appellee Philip C. Garber.

Before COFFIN and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

BREYER, Circuit Judge.

The issue in this diversity case is whether a Massachusetts statute, Mass.Gen. Laws ch. 223, § 42A, prevents a court from awarding interest to a party that shows it is legally entitled to an entire sum of money that it has attached. The statute limits attachments to "the amount of the claim and such additional amount as is reasonably necessary to include interest [and costs]." The district court evidently felt that this statute means that if the money necessary to pay interest is not included in the sum attached interest may not be paid. We disagree with this interpretation and remand this case for further proceedings.

The tortuous history of this case may be summarized as follows:

1. The Nigerian Pilgrims Board hired appellant Afcodian (International) Ltd. in 1978 to arrange to transport several thousand Nigerian pilgrims to Mecca. Afcodian, in turn, hired Brompton Air Services to supply the necessary planes. The Nigerian Pilgrims Board paid $215,800 in advance to Brompton's attorney, Philip Garber, who held the money in escrow.

2. Brompton did not provide the planes; Afcodian sued Brompton in federal court for breach of contract; and, Afcodian asked the court to attach the advance payment. The district court issued an order stating that

$215,800.00 being held by Philip C. Garber as escrow agent is attached and to be held by him until further order of the court.

3. The district court issued an order dissolving its attachment on June 6, 1979. It did so because the Nigerian Pilgrims Board was not a party to the suit. Despite this June 6 "dissolution" order, the attach-

* Of the District of Massachusetts, sitting by designation.

ment, legally speaking, was *not* dissolved until June 16, 1979. That is because Fed.R. Civ.P. 62(a) automatically stays such orders for ten days, thus allowing the losing party a chance, for example, to appeal. In this case, the losing party, Afcodian, did appeal, and this court found that Afcodian was legally correct: the district court was wrong to have dissolved the attachment. *Afcodian (International) Ltd. v. Brompton Air Services,* No. 79–8065 (1st Cir. June 15, 1979).

4. In the meantime, trustee Garber unfortunately and unlawfully had ignored Fed.R.Civ.P. 62(a) and had released the $215,800 to Brompton on June 13, 1979, only *seven* days after the district court's June 6 order, that is, while the attachment was still in effect. When this was pointed out to the district court, it found that Garber had acted unlawfully, but it did not hold Garber in contempt.

5. The district court, acting in accordance with this court's decision, reinstated the attachment. It discovered, however, that Garber could not get the entire $215,-800 back from Brompton, for Brompton had already spent much of the money. Brompton did return $47,000 in cash to Garber along with a promissory note for about $182,000 from a Brompton affiliate called American Trading Group, Inc. This cash and note became subject to Afcodian's renewed attachment.

6. Eventually (in January 1983) the district court decided the underlying lawsuit—the breach of contract claim—in Afcodian's favor. Afcodian then sought to collect the money it had attached. Garber paid Afcodian the $47,000 cash, but the note from American Trading Group, Inc. proved worthless, for both Brompton and American had filed for bankruptcy.

7. The court held Garber personally liable for the remaining $168,000 on the ground that Garber had unlawfully released the $215,800 to Brompton while it was still attached. This court affirmed in an unpublished opinion. *Afcodian (International) Ltd. v. Brompton Air Services,* No. 83–1151 (1st Cir. Jan. 24, 1984). Gar-

ber then paid Afcodian the additional $168,-000.

8. Afcodian then asked the district court for interest on the $215,800 it had attached for the period from 1979 to 1984, when the attachment was in effect. The district court denied this claim for interest on the basis of Mass.Gen.Laws ch. 223, § 42A, which reads in full as follows:

> In an action or suit for an amount which is liquidated or ascertainable by calculation, no attachment by trustee process or otherwise shall be made for a larger sum than the amount of the claim and such additional amount as is reasonably necessary to include interest thereon and costs likely to be taxed in the action.

Apparently, the court believed that this statute means that the size of the attachment limits the amount of the recovery; it believed that interest cannot be added to the amount attached. Since Afcodian attached only $215,800, it could receive no more from the trustee who held the funds.

We do not agree with the district court's interpretation of the statute for several reasons. First, the statute's language does not support the district court's reading. It simply sets a maximum limit on the amount that can be attached. It says that one cannot attach more money than is likely needed to pay the judgment plus interest plus costs. The statute does not say whether, or when, the party attached must pay interest in addition to the amounts attached.

Second, the district court's reading would produce a strange result. It would allow interest to a winning party only when the party knew with reasonable certainty how long the litigation would last and consequently could include the interest within the attachment. But, why should interest payable be so limited? Interest is normally earned on money held in escrow, and the interest earned is typically paid to whoever becomes legally entitled to the principal. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 162, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980). If the winning party is not to have it, who is? Would the

bank have free use of the money? Would the trustee simply keep it? Unless escrow money is held in cash and generates no interest (which would be unusual and undesirable), the statute, as the district court read it, would produce unjustified windfalls.

Third, the statute's most natural reading has nothing to do with interest limitation. It seems designed simply to prevent a plaintiff from seizing by attachment more money than will likely be needed to pay a judgment with attendant expenses. This purpose is perfectly consistent with earning interest on the money attached and paying that interest to the money's eventual owner.

Fourth, the Massachusetts authority cited to us, while somewhat unclear, suggests that not only the amount of money attached, but also additional interest, can be awarded in appropriate cases. The court in *Auburn Knitted Fabrics, Inc. v. Globe Indemnity Company*, 58 Mass.App. Dec. 1 (1976), awarded interest against a trustee on amounts the trustee held after it had been served with trustee process. The court stated that

> interest will be awarded where there is a duty to set aside at interest funds held by the trustee and a breach of that duty *vis a vis* the person to whom these funds are legally obligated.

*Id.* at 14. Garber cites *Central Trust Co. v. National Biscuit Co.*, 273 Mass. 319, 173 N.E. 695 (1930), and *Walker v. Lancashire Insurance Co.*, 188 Mass. 560, 75 N.E. 66 (1905), for the contrary proposition. But neither of those cases involves a situation parallel to the one in this case. Both those cases involved a contract between A and B, under which A owed B money, which money A did not pay to B on time. C attached the debt that A owed B. The courts held that C could not obtain interest on the A–B debt because B himself could have obtained interest from A only by proving that A's delay in payment breached the A–B contract and caused B harm. The courts in both cases stressed that C was seeking a sum that the law characterized as part of

B's damages, B's right to which was itself in dispute. These cases do not dispose of the different issue now before us where the interest is not 'disputed contractual damages,' but simply interest on an 'undisputed fixed sum' held in escrow. Regardless, the issue here closely resembles that in the later *Auburn Knitted Fabrics* case, where the court distinguished *Central Trust* and *Walker* on the grounds just mentioned and awarded interest.

Since there are further questions to be decided in this case, such as how much interest the attached sum actually earned, and the extent of the trustee's obligation to earn additional interest on the attached funds, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*