In re SHOP–N–GO OF MAINE, INC.
d/b/a Stop-N-Go of Maine,
Inc., Debtor.

**UNITED STATES of America Small Business Administration, Plaintiffs,**

v.

**SHOP–N–GO OF MAINE, INC. d/b/a Stop-N-Go of Maine, Inc. and Harvey J. Putterbaugh, Trustee, Defendants.**

Civ. No. 86–0095 P.

United States District Court,
D. Maine.

June 5, 1986.

Harlan J. Choate, Sp. Asst. U.S. Atty., Augusta, Me., for plaintiffs.

George J. Marcus, Anne M. Pare, Pierce, Atwood, Scribner, Portland, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT

GENE CARTER, District Judge.

This case is before the Court on appeal from a final order of the Bankruptcy Court awarding the Small Business Administration ("SBA") (1) the compounded interest earned on the investment of the net proceeds of the sale of its collateral from the date of investment until disbursement of the proceeds; and (2) the compounded interest earned on the investment of administrative expenses relating to the sale of Debtors' Pine Street property. The Trustee has appealed, asserting that both awards of interest and the method allowed for computing such interest were in error.

The stipulation of facts and legal issues on which the judgment below is based shows that Debtor filed its petition for reorganization under Chapter 11 on June 24, 1981. The case was converted to a Chapter 7 proceeding in November 1981, at which time the present Trustee was appointed. The SBA filed a complaint for relief from stay on December 4, 1981, and by agreement of all parties in interest, the Trustee sold the debtor's properties free and clear of liens held by the SBA. The SBA liens, which were for $93,240.66 on a note assigned by Depositors' Trust Co., and $80,820.18 on a note assigned to SBA by Northeast Bank, attached to the proceeds of the sales of the collateral. After making appropriate deductions, the Trustee realized total net proceeds of $31,620.88 on sale of the collateral for the Depositors'

note and $30,934.78 on the sale of collateral for the Northeast note.

Shortly after the sales in May 1982, the Trustee invested the proceeds in interest-bearing repurchase agreements at the variable rates of interest set forth in the parties' stipulation. On November 23, 1982, the Trustee contested the extent of the SBA liens on Debtor's property. After adjudication in the Bankruptcy Court and appeal to this Court, it was determined on April 2, 1984, that the SBA liens did not extend to all of Debtor's properties but were limited to five properties in Portland, Skowhegan and Lewiston, Maine.[1] On April 12, 1984, counsel for the SBA wrote a letter to the Trustee setting the amounts he thought were due the SBA under its assigned notes. On June 28, 1985, the SBA filed an application for an order requiring the Trustee to account and disburse, which resulted in the order which is the subject of this appeal.[2]

The Trustee first asserts that the SBA is not entitled to receive interest on the net proceeds of sale because the SBA is undersecured and interest is not payable by the Trustee with respect to undersecured claims. For this proposition, he relies on a negative inference drawn from 11 U.S.C. § 506(b) [3] and earlier decisional law providing that interest on claims against a debtor's funds ceases to accrue when the petition is filed. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163–64, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946).

The Court agrees with the Bankruptcy Court that the interest sought by the SBA here is not interest on its claim. There is no record indication that prior to liquidation the SBA ever sought more than the amounts due it on the notes plus interest that had accrued on the notes prior to the filing of the petition. The SBA's application for an order to account and disburse clearly seeks "all proceeds of sales of debtor's property subject to plaintiff's perfected security interest together with *all interest earned on said proceeds* from date of receipt by said trustee to date of disbursement to this plaintiff." Record, Vol. I–3 (emphasis added). In the context of a liquidation proceeding, this application cannot be construed to seek interest on the creditor's claim, which in turn increases the claim on an undifferentiated estate.

As has been oft stated, section 506 of Title 11 "merely codifies pre-Code law that an *oversecured* creditor can assert, *as part of its secured claim*, its right to interest and costs *arising under its credit agreement.*" *United Merchants & Manufacturers, Inc. v. Equitable Life Assurance Society*, 674 F.2d 134, 138 (2d Cir.1982) (emphasis in original; bold emphasis added). As the Trustee concedes, Appellant's Brief at 11, the interest sought does not arise under the credit agreement. It is not covered, therefore, by section 506(b) or the pre-Code rule there codified.

This is further demonstrated by the fact that many of the reasons for not allowing interest on secured claims to accrue after the filing of the petition do not apply with equal force when the interest sought is on proceeds, all of which are subject to a perfected security interest. For example, exaction of interest in this situation is not like the penalty for law-imposed delay prohibited by *Vanston* and its predecessors. *See Vanston*, 329 U.S. at 163, 67 S.Ct. at 240. The interest sought will not come from the general funds of the Debtor or its other assets, but from money generated from funds earmarked for the SBA.

---

1. The figures given above for proceeds on SBA's assigned notes represent the sums received from sales of these five properties, the liens upon which were never contested.

2. The briefs note that the Trustee disbursed the net proceeds of the sales of the collateral securing both assigned notes on October 15, 1985.

3. Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided under the agreement under which such claim arose.

Another reason expressed in *Vanston* for prohibiting accrual of interest concerned the administrative inconvenience of recomputation of claims because of continuous recomputation of interest. *Id.* at 164, 67 S.Ct. at 240. Such is obviously not the case here. The claim was a fixed one and did not fluctuate, causing uncertainty in the administration of the estate. The only administrative burden, once the collateral was liquidated, was payout of a sum readily determinable.

In deciding that the SBA is entitled to interest earned on the proceeds of its collateral, the bankruptcy judge relied on a nonbankruptcy case in which the Court of Appeals for the First Circuit allowed interest under a Massachusetts statute on money which had been attached. As here, the interest was "not 'disputed contractual damages,' but simply interest on an 'undisputed fixed sum' held in escrow." *Afcodian (International) Ltd. v. Brompton Air Services Division of African-American Trade Corp.*, 753 F.2d 176 (1st Cir.1985).

In an even more recent decision, the Court of Appeals has applied the same principle in a bankruptcy case in which a law firm sought to be compensated for delay in receiving its fees and expenses. In *Boston and Maine Corp. v. Moore*, 776 F.2d 2, 12 (1st Cir.1985), the Court affirmed the denial of compensation for delay in payment of legal fees during a corporate reorganization,[4] but allowed the law firm to collect is proportional share of interest that had accrued on a fund that had been set aside specifically to pay claims, including the law firm's claims for fees, that had not been paid prior to the consummation date of the reorganization. The Court stated:

> [W]e see no reason why the amount of interest earned by the portion of the fund that is to be awarded to Shea should not be paid to petitioner. *See In re Penn Central Transportation Co.*, 23 B.R. 499, 513 ([Bankr.]E.D.Pa.1982); *cf. Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980) ("The usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal."). It is true, of course, that Shea has no right to the money until its fee petitions are granted. Nonetheless, if some of the money was earmarked for payment to B & M's counsel, and Shea is now entitled to payment from that fund, it seems appropriate for petitioner to receive its proportionate share of the interest that has accrued in the interim. For parties other than for whose benefit the fund was established to receive the interest that has accrued, simply because the fees had not been paid earlier to Shea, strikes us as an undeserved windfall to them.

*Id.* at 13.

This Court realizes that the situation here is not identical to that set forth in *Moore*, where the fund was established after the reorganization was fully accomplished. It is analogous, however. Under 11 U.S.C. § 363, liquidated cash collateral, like the proceeds subject to SBA's liens here, must be segregated and accounted for. Because the segregated cash collateral may not be used by the Trustee without a court order, it is like a fund earmarked for the secured creditor. Moreover, the record does not indicate that any other creditor had an interest in the collateral which was liquidated, and the fact that the Trustee has paid to the SBA the entire proceeds from the collateral initially liened by it indicates that the SBA alone, and not other lienors, was entitled to the fund. This being so, the "circumstances and equi-

---

**4.** The SBA urges this Court to affirm the bankruptcy court's decision on a similar ground, granting it compensation for delay in enforcing its rights against the collateral under the concept of "adequate protection" set forth in 11 U.S.C. §§ 361–364. The bankruptcy court was presented with this argument but did not address it in its opinion or use it in any way as the basis for its decision. The record on appeal is inadequate for the Court properly to evaluate the adequate protection argument, which it appears is most often applied to interest in the reorganization rather than liquidation context.

ties permit[ted]," *id.*, the Bankruptcy Court's award to the SBA of the interest that had accrued on the proceeds from the sale of its collateral.

■ The Trustee also challenges the Bankruptcy Court's order "that the SBA is entitled to receive the interest earned on the investment of administrative expenses relating to the sale of debtor's 64 Pine Street property from the date of investment until disbursement of such amount to the SBA." The Trustee argues that the $4209.19 in administrative expenses erroneously charged to the SBA was not money retained and invested by the Trustee, but was instead paid out for rent and taxes. Although the Trustee cites Exhibit A to the Stipulation of Facts as substantiation of these points, that exhibit does not appear in the Court's file and cannot form a basis for the challenge to the bankruptcy court's ruling.

Even if the Court assumes the representations of counsel to be true, however, there appears no basis for overturning the Bankruptcy Court's decision awarding interest on the administrative expenses. The Bankruptcy Court did not make specific findings concerning the $4209.17 in administrative expenses. This Court can infer from the Court's ruling, however, that a sum equivalent to that sum, which the Trustee sought to charge to the SBA, was invested by the Trustee. *See In re Brown*, 21 B.R. 701 (1st Cir.Bankr.App.1984). The Bankruptcy Court's July 25, 1983 ruling made clear that although the Trustee had not regarded it so, the $4209.17 was indeed part of the fund earmarked for the SBA. Implicit in the Court's decision to award the interest on that acknowledged part of the fund is the finding that it is equitable to do so. Although it did not make its findings explicit, this Court assumes that the Bankruptcy Court exercised its discretion to award the interest only after it had made the appropriate equitable determinations. These would have included findings (1) that the fund contained sufficient sums to make the interest payments; (2) that the amount of the award was proper; and (3)

that there were not serious adverse effects on other outstanding claims. *See Boston and Maine Corp. v. Moore*, 776 F.2d at 13. There is no suggestion in the record that these findings, which necessarily underlie the Bankruptcy Court's decision, are clearly erroneous. Permitting the Trustee to retain, for distribution to other creditors, the interest earned on money which should have been in the secured creditor's fund would provide the undeserved windfall which the Court of Appeals sought to avoid in *Moore.*

The Trustee's final challenge regards the Bankruptcy Court's direction that "the SBA is entitled to receive such interest compounded, as "compounded" is defined in the parties' stipulation." The Trustee argues that "compounded" is not defined in the parties' stipulation and that simple interest is the only interest which has been quantified in the stipulation and can, therefore, be awarded.

Although the record is sparse and the bankruptcy judge does not detail what is meant by "compounded," he obviously found that more than simple interest was earned on the invested proceeds. It seems clear that under *Moore*, neither the Trustee nor other creditors should reap a windfall from the investment of SBA's liened proceeds. The SBA is entitled to all of the money earned with its money, whether initial interest or interest on reinvested interest. Having examined the briefs submitted to the Bankruptcy Court, this Court infers, once again, *see In re Brown*, 21 B.R. at 701, that the Bankruptcy Court's reference to the stipulation, as regards compounding, implies that the investments there described were actually reinvestments of both principal and interest. Thus, the Court's award of compounded interest describes that sum to which the SBA is equitably entitled.

Accordingly, it is ORDERED that the decision of the Bankruptcy Court is hereby affirmed.

So ORDERED.